# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re | |
| Samuel Jesse Christian Morreale, | Case No. 13-27310-TBM |
| Debtor. | Chapter 7 |

## TRUSTEE'S PRELIMINARY OBJECTION TO THE DEBTOR'S MOTION TO PAY CLAIMS IN FULL AND TO DISMISS CHAPTER 7 CASE

Tom H. Connolly, chapter 7 trustee (the "Trustee"), hereby submits this Preliminary Objection to the Debtor's Motion to Pay Claims in Full and to Dismiss Chapter 7 Case (the "Motion to Dismiss").  In support hereof, the Trustee states as follows:

1. Although the deadline to object to the Motion to Dismiss is not until December 24, 2015, the Trustee files this Preliminary Objection because the Motion to Dismiss is actually another last-minute attack on Morreale Hotels, LLC's ("MHL") highly successful sale process for its real estate on Broadway Avenue, set for hearing today in the MHL case.  As this Court is aware, success in this case is bound up with success in the MHL case, and vice versa.  The Chapter 7 estate owns a 100% equity interest in MHL and is co-liable with MHL on the loans secured by the Broadway property.  For tax purposes, MHL is a pass-through entity so tax consequences of actions in MHL impact the Chapter 7 estate.  The Chapter 7 estate even owns a 70% interest in the MHL *objecting* party, Sketch Restaurant, LLC, and is suing to recover the other 30% which was given away on the eve of bankruptcy.  Consistent with the close interrelationship between the two estates, the Motion to Dismiss is yet another attempt to interfere in MHL's case – while doing nothing for creditors in this case.

2. At the MHL auction yesterday, Digital Cowboy, LLC ("Digital Cowboy") was the successful bidder at the auction, with a winning bid of $6.55 million—an excellent result by

018043\0001\14079458.1

any measure for both the MHL estate and this estate. Granting the relief sought by the Debtor would require disapproval of that sale; in fact that is the express purpose of the Motion to Dismiss. The Debtor's attempt to negotiate a side deal with one of the bidders at the auction is problematic. The Debtor would have this Court cast aside a sale that is on track to close by December 11, 2015 (as Digital Cowboy committed on the record at the auction) in favor of a speculative, undeveloped proposal. The better option for creditors of both estates is to take the proverbial "bird in the hand" and close the committed sale next Friday.

3. The last-minute proposal appended to the Motion to Dismiss is only preliminary and thus carries multiple risks and delays for creditors. These risks and delays are wholly unnecessary. The preliminary letter agreement (the "Letter Agreement") that forms the basis of the proposed transaction is laden with multiple vague contingencies, including the drafting and execution of definitive documentation. *See* Motion to Dismiss, Ex. A. Furthermore, the Letter Agreement provides that the transactions contemplated therein (*i.e.*, the transfer of the Broadway Property and the Colfax Property to Digital Cowboy) will be subject to this Court's approval in the MHL case, but it does not specify a process or a timeline for obtaining Court. This is the type of issue that one would typically expect to be addressed in even the most preliminary of sale agreements; that the Letter Agreement is silent shows how far it is from a "done deal."

4. Although the Debtor's proposed transaction is not clearly spelled out, at bottom, Digital Cowboy—the buyer under either scenario—would pay cash to acquire a fee simple interest in the Broadway Property. Given the $6.55 million sale price for the Broadway Property via the auction, the aggregate price that will be obtained for both properties through the currently pending sale process is likely to exceed the offer outlined in the Letter Agreement. MHL would only need to sell the Colfax Property for $2.45 million in order to exceed the anticipated $9

million transaction price under the Debtor's proposal. There is a buyer for the Colfax Property at $2.7 million. Regardless, the small potential differences in no way justify the new set of risks inherent in the Debtor's speculative proposal.

5. The Motion to Dismiss is also vague regarding actual distributions and payments to creditors. The claims resolution and distribution process should be conducted and concluded in the ordinary bankruptcy process and subject to this Court's supervision. The Letter Agreement, however, envisions that the funding from Digital Cowboy will be deposited with an escrow agent, who will be responsible for making distributions to creditors, apparently subject to the Debtor's intent to continue to fighting with his creditors. *See, e.g.*, Mtn. to Dismiss at n.3 (stating that the Debtor intends to pay all "valid" claims") & n.5 (opining on the validity of various claims). There already is a disinterested third party able to make distributions – the Chapter 7 trustee. The slapdash proposal in the Motion to Dismiss presents no basis to upset clear statutory mechanisms in place. That is especially true given the Debtor's history with his creditors and this case. The Debtor asks that the proverbial fox be put back in charge of the hen house.

6. The Motion to Dismiss also overlooks that the sale of the real property is likely to have significant tax consequences. The transfer of the Broadway and Colfax Properties to Digital Cowboy for the consideration proposed in the Letter Agreement would likely create a significant capital gain and an administrative claim against this estate (as MHL is a single-member LLC). The Motion to Dismiss and the Letter Agreement do not analyze the estate's potential tax liability or the ability to satisfy that claim with the proposed funding from Digital Cowboy. It shows no recognition of the issue, consistent with the Debtor's failure to file tax returns for years.

7.	Overall, the nearly-concluded sale process for the Broadway Property creates a clear path for an orderly and successful conclusion to two highly contentious cases. With the sale of the Broadway Property for $6.55 million and the forthcoming sale of the Colfax Property, the stage is set for significant distributions in this chapter 7 case and a liquidating chapter 11 plan in the MHL case. The successful resolution of these cases is a result of the steps taken by the Trustee and MHL—opposed by the Debtor at every turn—that brought order, stability, and confidence to the process of monetizing the real estate that is MHL's primary asset. The Debtor's Motion to Dismiss, if granted, would unravel much progress.

WHEREFORE, the Trustee respectfully requests that the Court enter an order denying the Motion to Dismiss and granting such other and further relief as is just and proper.

DATED: December 4, 2015	Respectfully submitted,

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

*s/ Michael J. Pankow*
Michael J. Pankow, #21212
Samuel M. Kidder, #49125
410 17th Street, Suite 2200
Denver, CO 80202-4432
Tel: (303) 223-1100
Fax: (303) 223-1111
mpankow@bhfs.com
skidder@bhfs.com

*Attorneys for Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I certify that on December 4, 2015, I served a copy of the foregoing document entitled **TRUSTEE'S PRELIMINARY OBJECTION TO THE DEBTOR'S MOTION TO PAY CLAIMS IN FULL AND TO DISMISS CHAPTER 7 CASE** (i) by electronic means on the parties noted in the Court's ECF transmission facilities and (ii) by prepaid first class mail to the following parties:

Patrick D. Vellone
Allen & Vellone P.C.
1600 Stout St., Suite 1100
Denver, CO 80202

Bruce Rohde
1129 Cherokee St.
Denver, CO 80204

*s/Vicki O'Brien*
Vicki O'Brien