**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>SAMUEL JESSE CHRISTIAN MORREALE,<br><br>Debtor. | Bankruptcy Case No. 13-27310 TBM<br>Chapter 7 |

---

**MEMORANDUM ORDER AND OPINION ON "FEE DEFENSE ATTORNEYS' FEES" PORTION OF BROWNSTEIN HYATT FARBER SCHRECK, LLP'S THIRD INTERIM APPLICATION FOR PROFESSIONAL COMPENSATION**

---

### I.  Introduction.

This difficult and lengthy Chapter 7 liquidation is slowly nearing the end. All creditors have already been paid in full. The final skirmishes are playing out over administrative expenses. Years ago, the Chapter 7 Trustee, Tom Connolly (the "Trustee"), retained the law firm of Brownstein Hyatt Farber Schreck, LLP ("BHFS") as legal counsel. The Court approved such engagement. Recently, BHFS submitted its "Third Interim Application for Allowance of Fees and Expenses for the Period from June 1, 2016 through January 1, 2019" (Docket No. 988, the "Third BHFS Application").[1] In the Third BHFS Application, BHFS requests, among other things, $22,850 in fees for defense of a prior BHFS fee application as well as $63,091 for representation of the Trustee in defense of the Trustee's own fee application. Both the Debtor, Samuel Jesse Christian Morreale (the "Debtor"), and the United States Trustee objected to the Third BHFS Application on multiple grounds, including that BHFS may not be awarded fees for fee defense under recent United States Supreme Court precedent: *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158 (2015).

This decision focuses only on the fees for fee defense objections, while leaving the rest of the objections for another day. Fee disputes are difficult, especially where, as in this case, a professional has done good work and helped achieve an exceptional result – full payment of creditors and a surplus potentially available for return to the Debtor. But the question is whether, as a matter of law, BHFS can be allowed compensation for defending its own prior fee application and the Trustee's own fee application. Under the applicable statutory framework as interpreted by the Supreme

---

[1]  Except when noted otherwise, the Court will use the convention "Docket No. ___" to refer to the docket numbers of documents in the CM/ECF electronic case file for this case.

Court in *ASARCO*, the answer is no.

## II. Jurisdiction and Venue.

The Court has jurisdiction to enter final judgment on this professional compensation dispute pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), since it concerns administration of the bankruptcy estate. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Procedural Background and Facts.

### A. Employment of BHFS.

The Debtor filed for protection under Chapter 11 of the Bankruptcy Code on October 15, 2013. (Docket No. 1.) On December 9, 2014, the Court converted the case from a Chapter 11 reorganization to a Chapter 7 liquidation. (Docket Nos. 292, 293, 294, and 296.) Tom Connolly was appointed as the Chapter 7 Trustee. (Docket No. 298.) Shortly thereafter, the Trustee moved to employ BHFS as legal counsel pursuant to 11 U.S.C. § 327. (Docket No. 402.) The Court approved the employment of BHFS effective *nunc pro tunc* to February 27, 2015. (Docket No. 406). Since such time — more than 4 years — BHFS has continued to serve capably and effectively as legal counsel to the Trustee.

### B. The First and Second BHFS Applications, Objections, and Partial Interim Approvals.

Periodically, BHFS sought compensation for its legal services and recovery of its costs. On October 23, 2015, BHFS filed "Brownstein Hyatt Farber Schreck, LLP's First Interim Application for Allowance of Fees and Expenses for the Period from February 27, 2015, through September 30, 2015" (Docket No. 564, the "First BHFS Application"), in which BHFS sought approval of $145,526.50 in legal fees and $8,637.46 in costs incurred in connection with its representation of the Trustee.[2] The Debtor opposed the First BHFS Application for a variety of reasons. Suffice to say, the Debtor did not agree that all of the services provided by BHFS were reasonably likely to benefit the estate nor that they were necessary to the administration and completion of the case.

After reviewing the briefs and considering legal argument, the Court ultimately approved, on an interim basis, a portion of the fees requested in the First BHFS Application. In its "Order Approving, in Part, Brownstein Hyatt Farber Schreck, LLP's First Interim Application for Allowance of Fees and Expenses" (Docket No. 756, the "Order on First BHFS Application"), the Court stated:

> This Court has reviewed carefully and in detail Applicant's First Interim Application and the Supplement, including the

---

[2] Pursuant to the Court's Order, BHFS subsequently filed a "Supplement" to the First BHFS Application (Docket No. 713) to comply with L.B.R. 2016-1.

2

> billing records submitted in support thereof (Docket No. 713-1, Exhibits 1-5). This Court's review of the billing records, particularly for services charged in the category titled "Asset Disposition," raises concerns as to whether some of the services provided and charged were of benefit to this estate, or rather, were services provided for the benefit of the separate estate in the bankruptcy case: *In re Morreale Hotels, LLC*, Case No. 12-35230 TBM. The Applicant has not been approved as counsel for Morreale Hotels, LLC. Benefit to the estate is an essential finding this Court must make in order to comply with its statutory obligations under 11 U.S.C. 330(a)(1). The benefit to the estate requirement is a threshold inquiry under the language of Section 330 according to binding Tenth Circuit precedent. *Rubner & Kutner v. U.S. Trustee (In re Lederman Enterprises, Inc.)*, 997 F.2d 1321 (10th Cir. 1993).
>
> Because the First Interim Application and Supplement are before the Court for allowance on an interim basis, this Court need not confront that concern at this juncture. Instead, the Court will reserve determination of that threshold inquiry until Applicant seeks allowance of its fees and expenses incurred on a final basis. The fees which are of concern represent only a fraction of the fees requested; and Applicant should be allowed the fees and expenses which are not in question. Thus, the Court determines that Applicant should be allowed 75% of the fees and 100% of its expenses requested.

(Order on First BHFS Application at 2.) The Court allowed, on an interim basis, only a portion of the fees and expenses requested in the First BHFS Application, approving fees in the amount of $109,144.87 and expenses in the amount of $8,637.46. (*Id.*)

Meanwhile, on August 4, 2016, BHFS filed "Brownstein Hyatt Farber Schreck, LLP's Second Interim Application for Allowance of Fees and Expenses for the Period from October 1, 2015 through May 31, 2016" (Docket No. 714, the "Second BHFS Application"), in which BHFS sought approval of $237,516.50 in legal fees and $8,023.28 in costs incurred in its representation of the Trustee. The Debtor objected to the Second BHFS Application. (Docket Nos. 724 and 770.) After reviewing legal briefs on the issues arising from the Second BHFS Application as well as a "Stipulation Regarding Brownstein Hyatt Farber Schreck, LLP's Second Interim Application for Allowance of Fees and Expenses for the Period from October 1, 2015 through May 31, 2016" filed by BHFS and the Debtor (Docket No. 803), the Court approved, on an interim basis, $226,435.00 of the fees and $8,023.28 of the costs requested in the Second BHFS Application. (Docket No. 804.)

**C.     The Trustee's Application, Objection, Denial, and Appeals.**

Thereafter, on May 4, 2017, the Trustee filed his "First Interim Application of Tom Connolly, Chapter 7 Trustee, for Allowance of Compensation and Expenses" (Docket No. 823, the "Trustee's Application") seeking an interim commission of $260,000.[3]  The Trustee requested the statutory maximum commission based upon disbursements to creditors in this case.  However, he also requested additional compensation based upon $8,432,273.80 in disbursements made to creditors in the related Chapter 11 case of Morreale Hotels, LLC: *In re Morreale Hotels, LLC*, Case No. 12-35230 (Bankr. D. Colo.) (the "*Morreale Hotels* Case").  The Debtor objected.  (Docket No. 830.)  He argued that the Trustee's commission must be limited to a percentage of distributions made in this case.

In the legal briefs and at the hearing that followed on the Trustee's Application, BHFS represented the Trustee, at the Trustee's request and direction.  Despite the law firm's ardent advocacy on the Trustee's behalf, the Court determined that the Trustee's Application was contrary to 11 U.S.C. § 326.  Concluding that the Trustee's commission could be calculated by using only those disbursements made in this Chapter 7 case, the Court ruled against the Trustee and denied his request for compensation to the extent that it was based on $8,432,273.80 in disbursements made in the separate *Morreale Hotels* Case.  (Docket No. 927, the "Trustee Fee Denial Order.")

The Trustee appealed the Trustee Fee Denial Order to the Bankruptcy Appellate Panel for the Tenth Circuit.  (Docket Nos. 937-40.)  The Bankruptcy Appellate Panel for the Tenth Circuit affirmed.  *Connolly v. UST (In re Morreale)*, 595 B.R. 409 (10th Cir. BAP 2019) (Docket Nos. 986 and 987.)  Thereafter, the Trustee appealed to the Tenth Circuit Court of Appeals.  (Docket Nos. 990 and 991.)  Such further appeal remains pending.  BHFS represented the Trustee in both appeals, again, at the Trustee's request and direction.

**D.     The Third BHFS Application and Objections.**

On February 8, 2019, BHFS filed the Third BHFS Application, seeking approval of fees in the amount of $285,615.00 and reimbursement of expenses in the amount of $12,458.51.  As set forth in more detail below, in the Third BHFS Application BHFS requested compensation for defending the Second BHFS Application as well as defending the Trustee's Application in the Court and on appeal.

Both the United States Trustee and the Debtor objected on the basis that fees charged for BHFS's defense of the Second BHFS Application as well as the Trustee's Application are not compensable as a matter of law under 11 U.S.C. § 330 and binding United States Supreme Court precedent:  *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158 (2015).  (Docket No. 994, the "Debtor's Objection"; and Docket No. 999, the

---

[3]     In most Chapter 7 cases, the Trustee seeks compensation as part of a final report.  Interim requests are the exception.  Because of the unusual circumstances of this case, and because the Trustee anticipated opposition to the amount of his fees, he filed an interim application.

4

"UST Objection".)  The Court refers to such objections as the "Fee Defense Attorneys' Fee Issues."  The United States Trustee and the Debtor also objected to the Third BHFS Application on a myriad of other grounds, including reasonableness of the amount requested and benefit to the estate.  (*Id.*)  The Court conducted a preliminary hearing on the Third BHFS Application, Debtor's Objection, and UST Objection in order to determine the sequence and timing for adjudication.  (Docket No. 1017.)

After considering the respective positions of BHFS, the Debtor, and the United States Trustee, the Court determined, as a matter of efficiency and economy, that resolution of the dispute should proceed in stages.  First, the Court elected to decide the Fee Defense Attorneys' Fee Issues raised in the Debtor's Objection and UST Objection.  Put another way, the Court chose to determine whether, as a matter of law, BHFS may be compensated for defense of the Second BHFS Application and the Trustee's Application.  Then, the Court decided that all other objections to the First, Second, and Third BHFS Applications should be considered in the context of an anticipated Final Fee Application to be made by BHFS in the future.

To that end, the Court entered an "Order and Notice of Evidentiary Hearing Limited to 'Fee Defense Attorneys' Fees' Portion of Brownstein Hyatt Farber Schreck, LLP's Third Interim Application for Professional Compensation" (Docket No. 1019), requiring the parties to provide a set of stipulated facts along with any further legal briefs on the Fee Defense Attorneys' Fee Issues.  The Court also set an evidentiary hearing at which the parties were to present evidence on any disputed factual issues and offer legal argument solely on the Fee Defense Attorneys' Fee Issues.  Consistent with the Court's direction, on May 15, 2019, BHFS submitted its "Memorandum Brief Regarding 'Fee Defense Attorneys' Fees'" (Docket No. 1027, the "BHFS Brief").

**E.    Specification of the Fee Defense Attorneys' Fees.**

On May 22, 2019, the parties submitted a "Stipulation Regarding Brownstein Hyatt Farber Schreck, LLP's Third Interim Application for Allowance of Fees and Expenses" (Docket No. 1031, the "Stipulation").  In the Stipulation, the parties agreed that certain of the fees listed by BHFS in the Third BHFS Application constitute Fee Defense Attorneys' Fees.  Such fees are broken down into two categories: (1) Fee Defense Attorneys' Fees related to defense of the Second BHFS Application; and (2) Fee Defense Attorneys' Fees related to defense of the Trustee's Application (including prosecution of appeals).[4]

**1.    Defense of Second BHFS Application.**

In the Stipulation, BHFS, the Debtor, and the United States Trustee agreed that 27 of BHFS's timekeeper entries on dates between August 25, 2016 and January 14, 2019, constituting 47.8 hours of billable time valued at $22,850, were in defense of the

---

[4]    Fees incurred by BHFS for preparation of the BHFS Second Application are not part of the Fee Defense Attorneys' Fees.

5

Second BHFS Application. Each of the subject time entries was part of Exhibit B-4 to the Third BHFS Application and is identified specifically in the Stipulation.

### 2. Defense of the Trustee's Application.

Similarly, in the Stipulation, BHFS, the Debtor, and the UST agreed that 78 of BHFS's timekeeper entries on dates between May 5, 2017, and January 24, 2019, constituting 125 hours of billable time valued at $63,091, were in defense of the Trustee's Application (including prosecution of appeals). Each of the subject time entries was part of Exhibits B-1 or B-4 to the Third BHFS Application and is identified specifically in the Stipulation.

### F. Hearing on Fee Defense Attorneys' Fee Issues.

The Court conducted an evidentiary hearing on the Fee Defense Attorneys' Fee Issues on May 24, 2019. (Docket No. 1035.) At the hearing, the Trustee testified. Thereafter, BHFS, the Debtor, and the United States Trustee requested that the Court decide the Fee Defense Attorneys' Fee Issues based upon the Trustee's testimony as well as the Stipulation, the Third BHFS Application, the Debtor's Objection, and the UST Objection, along with written and oral legal argument. Thus, the discrete Fee Defense Attorneys' Fee Issues are ripe for decision.

### IV. Discussion and Legal Analysis.

In the Third BHFS Application, BHFS requests allowance of $22,850 in fees for defense of the Second BHFS Application and $63,091 in fees for defense of the Trustee's Application. As the procedural background and facts are not in dispute, the Court is called to resolve a fundamental legal issue: May BHFS be compensated for such work?

### A. The Applicable Statutes.

The starting place for the Court's legal analysis is, of course, the statutory text. Under 11 U.S.C. § 327 ("Section 327"), "the trustee, with the court's approval, may employ one or more attorneys . . . or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties . . . ." The Court approved the employment of BHFS as a "professional person" under Section 327. (Docket No. 406.) 11 U.S.C. § 330 ("Section 330") is titled "Compensation of Officers" and deals with compensation of trustees and "professional persons" including attorneys. Attorneys may apply for compensation at the end of a bankruptcy case after they complete their legal services or, alternatively, on an interim basis under 11 U.S.C. § 331 ("Section 331"). As the title of the Third BHFS Application reflects, BHFS seeks interim compensation under Section 331. But Section 331 incorporates Section 330 as the legal standard for the award of interim compensation. 11 U.S.C. § 331 (". . . any professional person employed under Section 327 . . . may apply to the court for such

6

[interim] compensation . . . as is provided under Section 330 . . . ."). BHFS, the Debtor, and the United States Trustee agree that it all comes back to Section 330.

Thus, Section 330 governs the award of compensation to BHFS under the Third BHFS Application. Section 330(a)(1)(A) provides:

> After notice to the parties in interest and the United States Trustee and a hearing . . . , the court may award to a trustee . . . or a professional person employed under section 327. . . *reasonable compensation for actual, necessary services rendered* by the trustee . . . [or] professional person . . . .

(emphasis added.)[5]

Parsing the statutory language further, Section 330(a)(3) contains a list of non-exclusive factors that the Court should consider in evaluating "the amount of reasonable compensation" of attorneys. To be sure, the Debtor and, to a lesser extent, the United States Trustee object to the reasonableness of the overall amounts requested by BHFS in the Third BHFS Application. However, the Court reserved that issue for determination in the future in the context of BHFS's Final Fee Application.

The only discrete issue that the Court is addressing at this stage is whether, as a matter of law, BHFS may be allowed *any* fees for the defense of the Second BHFS Application and the Trustee's Application. So, the focus is on the "actual, necessary services" part of Section 330(a)(1). In considering the Fee Defense Attorneys' Fees Issues, Section 330(a)(4)(A) also provides further guidance:

> [T]he court shall not allow compensation for — (i) unnecessary duplication of services; or (ii) services that were not — (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case.

And Section 330(a)(6) expressly allows bankruptcy counsel compensation "for the preparation of a fee application . . . ." However, that statute only addresses the preparation of the application itself – not additional fees incurred in defense of the application.[6]

Putting it all together, the Court must decide whether BHFS's defense of the Second BHFS Application and the Trustee's Application were "actual, necessary services" that were "reasonably likely to benefit the debtor's estate" or "necessary for the administration" of this bankruptcy case.

---

[5] The Court also has the discretion to "award compensation less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2).

[6] There is no dispute that BHFS is entitled to recovery of fees for time spent preparing its fee applications under Section 330(a)(6). Instead, this decision is directed only at the objections to an award of attorneys' fees for defending the Second BHFS Application and Trustee's Application.

7

### B. The Supreme Court's *ASARCO* Decision.

The Court's job is easier because the United States Supreme Court recently addressed virtually the exact fees for fee defense issue in *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158 (2015). In *ASARCO*, Justice Thomas, writing for the majority, identified the legal question and stated the holding — which is, of course, binding on the Court in this bankruptcy case:

> The question before us is whether § 330(a)(1) permits a bankruptcy court to award attorney's fees for work performed in defending a fee application in court. We hold that it does not . . . .

*Id.* at 2162. Although the ruling is quite definitive, a bit more context is appropriate before applying it to the current dispute.

The procedural and factual background in *ASARCO* is as follows. ASARCO, a copper mining, smelting, and refining company, filed for Chapter 11 bankruptcy protection. ASARCO acted as the debtor-in-possession during the reorganization. Relying on Section 327, ASARCO sought and obtained bankruptcy court authorization to employ the Baker Botts L.L.P. and Jordan, Hyden, Womble, Culbreth & Holzer P.C. law firms. The law firms successfully prosecuted fraudulent transfer claims against ASARCO's parent company and obtained a judgment "worth between $7 and $10 billion." *Id.* at 2163. As a result of the favorable judgment, ASARCO was able to pay all its creditors in full. Subsequently, the newly-reorganized ASARCO (the "Reorganized ASARCO") emerged from bankruptcy under the control of its parent company — the same entity that the law firms had sued on behalf of ASARCO during the bankruptcy proceedings. Subsequently, the law firms filed applications with the bankruptcy court under Section 330(a)(1), seeking substantial compensation for their legal services in the fraudulent transfer action. Despite the success achieved by the law firms, the Reorganized ASARCO (now under the control of the target of the fraudulent transfer action) objected to paying the law firms. The bankruptcy court rejected the Reorganized ASARCO's objections and awarded the law firms approximately $120 million "plus a $4.1 million enhancement for exceptional performance." *Id.* But the bankruptcy court went even further: To compensate the law firms for the extraordinary amount of additional costs in the fee fight, the bankruptcy court also awarded "over $5 million for time spent litigating in defense of their fee applications." *Id.* At the first appellate level, the District Court affirmed.

However, on further appeal, the United States Court of Appeals for the Fifth Circuit reversed on the basis that "the [Bankruptcy] Code contains no statutory provision for recovery of attorney fees for *defending* a fee application." *ASARCO, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re ASARCO, L.L.C.)*, 751 F.3d 291, 301 (5th Cir. 2014) (quoting *In re Teraforce Tech. Corp.*, 347 B.R. 838, 867 (Bankr. N.D. Tex. 2006)). Furthermore, the intermediate appellate panel observed that "[t]he primary beneficiary of a professional fee application, of course, is the professional." *ASARCO*, 751 F.3d at 299.

8

The Supreme Court affirmed the Fifth Circuit's disposition. Justice Thomas started his analysis with the "American Rule":

> Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.

*ASARCO*, 135 S. Ct. at 2164 (quoting *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 252–53 (2010)). Next, citing both Sections 327(a) and 330(a), the Supreme Court determined that "Congress did not expressly depart from the American Rule to permit compensation for fee-defense litigation by professionals hired to assist trustees in bankruptcy proceedings." *Id.*

Shifting to a more detailed examination of the statutory text and the term "services," Justice Thomas stated:

> [T]he phrase "reasonable compensation for actual, necessary services rendered" neither specifically nor explicitly authorizes courts to shift the costs of adversarial litigation from one side to the other — in this case, from the attorneys seeking fees to the administrator of the estate — as most statutes that displace the American Rule do.
>
> Instead, § 330(a)(1) provides compensation for all § 327(a) professionals — whether accountant, attorney, or auctioneer — for all manner of work done *in service of* the estate administrator. More specifically, § 330(a)(1) allows "reasonable compensation" only for "*actual, necessary services rendered.*"

*ASARCO*, 135 S. Ct. at 2165 (emphasis in original). The Supreme Court clarified: "Section 330(a)(1) does not authorize courts to award 'reasonable compensation' *simpliciter*, but 'reasonable compensation *for actual, necessary services rendered by*' the § 327(a) professional." 135 S. Ct. at 2167 (emphasis in original).

Standing firmly behind the American Rule, Justice Thomas rejected a reading of Section 330(a)(1) that would include fees litigation within the definition of "services." The Supreme Court explained:

> [R]eading "services" in this manner could end up compensating attorneys for the *unsuccessful* defense of a fee application. The firms insist that "estates *do* benefit from fee defenses" — and thus receive a "service" under § 330(a)(1) — because "the estate has an interest in obtaining a just determination of the amount it should pay its

9

>professionals." . . . But that alleged interest — and hence the supposed provision of a "service" — exists whether or not a § 327(a) professional prevails in his fee dispute. We decline to adopt a reading of § 330(a)(1) that would allow courts to pay professionals for arguing for fees they were found never to have been entitled to in the first place. Such a result would not only require an unnatural interpretation of the term "services rendered," but a particularly unusual deviation from the American Rule as well, as "[m]ost fee-shifting provisions permit a court to award attorney's fees only to a 'prevailing party,'" a " 'substantially prevailing' party," or "a 'successful' litigant" . . . . There is no indication that Congress departed from the American Rule in § 330(a)(1) with respect to fee-defense litigation, let alone that it did so in such an unusual manner.

*Id.* at 2166 (internal citations omitted, emphasis in original).

Ultimately, the *ASARCO* majority determined that "litigation in defense of a fee application is not a 'service' within the meaning of § 330(a)(1)." *Id*. Even the *ASARCO* dissent recognized that "a professional's defense of a fee application is not a 'service' within the meaning of the Code." *Id*. at 2169. Instead, fee defense litigation is "properly characterized as work that is for the benefit of the professional and not the estate." *Id*. at 2167 (quoting with apparent approval a statement from the United States Trustee, 78 Fed. Reg. 36250 (2013)). The Supreme Court also rejected various policy arguments for fee defense fees as being contrary to the Bankruptcy Code. *ASARCO,* 135 S. Ct. at 2166-69.

The Supreme Court majority ended this way:

>Section 330(a)(1) itself does not authorize the award of fees for defending a fee application, and that is the end of the matter.
>
>. . . .
>
>Because § 330(a)(1) does not explicitly override the American Rule with respect to fee-defense litigation, it does not permit bankruptcy courts to award compensation for such litigation.

*Id*. at 2169.

### C. Fees for Defense of the Second BHFS Application Are Not Compensable.

In this case, BHFS seeks award of $22,850 in compensation for defense of its own Second BHFS Application. But what BHFS wants is completely foreclosed by the Supreme Court's *ASARCO* decision.

Like the law firms in *ASARCO*, BHFS is a "professional" under Section 327. The Court approved BHFS's employment under that statute. Thereafter, similarly to the law firms in *ASARCO*, BHFS rendered some valuable services for the bankruptcy estate. There is no dispute that the Trustee requested the substantive legal services from BHFS. After rendering such legal services, BHFS prepared the Third BHFS Fee Application under Sections 330 and 331. As in *ASARCO* (and quite unusually), the Trustee already has paid all creditors in full in this bankruptcy proceeding. The only remaining interested party claiming a residual interest in the remaining assets of the bankruptcy estate (other than the Trustee and BHFS) is the Debtor. *See* 11 U.S.C. § 726(a)(6) (providing for return of any surplus funds to the bankruptcy debtor). As in *ASARCO*, objections were lodged to the BHFS Third Application. As in *ASARCO,* the United States Trustee and the Debtor question whether BHFS may be compensated for the $22,850 incurred in defending its own Second BHFS Application. The Supreme Court has decided that such fee defense fees cannot be awarded: "Section 330(a)(1) itself does not authorize the award of fees for defending a fee application, and that is the end of the matter." *ASARCO*, 135 S. Ct. at 2169.

In the face of squarely dispositive and binding appellate precedent, BHFS engages in a series of legal gymnastics in an effort to distinguish *ASARCO*. *First*, BHFS argues that *ASARCO* is different and limited only to circumstances in which a client opposes an attorneys' fee request. BHFS Br. at 1-2. *Second*, BHFS suggests that Section 330 should "not apply to the particulars of the Debtor's objection" because the objections to BHFS's fees are "largely attacks on the Trustee's administration of this case" and BHFS's defense of its own fees is "bound up with its defense of the Trustee." BHFS Br. at 7. *Third*, BHFS invites the Court to avoid *ASARCO* because of the "unfairness and unfortunate policy results" that arise from deeming fee litigation noncompensable. BHFS Br. at 10. While the Court believes that BHFS has rendered valuable services in this bankruptcy case and sympathizes with its position, none of its attempts to distinguish *ASARCO* is viable with respect to the $22,850 in fees it is attempting to collect for defending its Second BHFS Application.

#### 1. BHFS's First Argument.

With respect to its first argument, BHFS seizes on the following passage from *ASARCO*:

> Time spent litigating a fee application against the administrator of a bankruptcy estate cannot be fairly described as "labor performed for" — let alone "disinterested service to" — that administrator.

11

*ASARCO*, 135 S. Ct. at 2165. It is true that the law firms in *ASARCO* were litigating fee objections asserted by the Reorganized ASARCO and not some other party in interest. But that is of almost no moment. The *ASARCO* holding is not limited only to circumstances in which an administrator of a bankruptcy estate itself objects to an attorney fee application. Instead, the ruling is broader.

The actual holding of *ASARCO* is: "Section 330(a)(1) itself does not authorize the award of fees for defending a fee application, and that is the end of the matter." *Id.* at 2169 (emphasis added). The great majority of courts interpreting *ASARCO* in the last few years are in accord and do not limit the holding to circumstances in which a "bankruptcy administrator" has objected. *See Lejeune v. JFK Capital Holdings, L.L.C. (Matter of JFK Capital Holdings L.L.C.)*, 880 F.3d 747, 755 (5th Cir. 2018) (citing *ASARCO* for proposition that "bankruptcy professionals cannot be compensated for time spent litigating their fees"); *In re Anmuth Holdings LLC,* 2019 WL 1421169, at *11, n.19 (Bankr. E.D.N.Y. Mar. 27, 2019) ("In [*ASARCO*], the Supreme Court held that fees associated with defending an objection to an application for compensation under § 330(a) were not compensable.")*; In re Private Asset Grp., Inc.*, 579 B.R. 534, 545 (Bankr. C.D. Cal. 2017) (citing *ASARCO* for proposition that "fees incurred by an attorney in defending his own fees in a bankruptcy estate cannot be recovered from the bankruptcy estate"); *In re Cmty. Home Fin. Serv., Inc.*, 2017 WL 1753224, at *11 (Bankr. S.D. Miss. May 3, 2017) (noting that the Court in *ASARCO* "held that fees and expenses incurred in defending a fee application are not compensable by a bankruptcy estate"); *In re Rosenberg*, 2017 WL 1102864, at *5 (Bankr. S.D. Fla. Mar. 16, 2017) ("The Supreme Court ruled [in *ASARCO*] only that a bankruptcy court cannot award fees to debtor's counsel incurred in defending an objection to a fee award under § 330(a) . . . ."); *In re Rose*, 561 B.R. 70, 75 (Bankr. W.D. Mich. 2016) (stating that in *ASARCO*, the Supreme Court "held that section 330(a)(1) does not authorize compensation for defending a fee application."); *In re Stanton*, 559 B.R. 781, 782 (Bankr. M.D. Fla. 2016) (stating that in *ASARCO,* "the United States Supreme Court held that Bankruptcy Code § 330(a) does not authorize attorney's fees for work performed defending a fee application because that work is not performed for the estate").

Even in circumstances where bankruptcy debtors or trustees do not object, fee defense fees still are not compensable. *See In re Johnson*, 580 B.R. 742 (Bankr. S.D. Ohio 2017) (Chapter 11 debtor's counsel sought fee defense fees; debtor did not object, but court determined that "these fees would not have been recoverable in any event under the Supreme Court's decision in [*ASARCO*]."); *Kotlarsky v. Rosen (In re Silver Spring Family Med. Ctr., LLC)*, 550 B.R. 286, 294 (D. Md. 2016) (Chapter 7 trustee's counsel sought fees incurred in defending its fee application; Chapter 7 trustee did not object but court determined that payment of such fees would be "unlawful" under *ASARCO*); *In re Huepenbecker*, 546 B.R. 381, 383 (Bankr. W.D. Mich. 2015) (Chapter 12 trustee's counsel sought fee defense fees; Chapter 12 trustee did not object; but

court found that in *ASARCO* "the Supreme Court held that bankruptcy courts may not award attorney fees . . . for work performed in defending a fee application.").[7]

In any event, BHFS's hyper-technical focus on the somewhat peculiar facts in *ASARCO* as a means of distinguishing the case misses the big picture: Justice Thomas' main point was that in defending their own fee applications, law firms are not rendering services benefiting the bankruptcy estate. *See Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enter., Inc.)*, 997 F.2d 1321, 1323 (10th Cir. 1993) ("An element of whether the services were 'necessary' is whether they benefited the bankruptcy estate."). Instead, in fee defense circumstances, law firms are working only to benefit themselves.

One other point about *ASARCO*: Despite BHFS's attempt to distinguish the opinion, the case is actually eerily similar to what is happening in this dispute. In *ASARCO*, the law firms represented ASARCO as a debtor-in possession in a bankruptcy fraudulent transfer action against ASARCO's parent company. Later, all of ASARCO's creditors were paid in full. Then, the Reorganized ASARCO emerged, controlled by ASARCO's parent company and vested with all remaining surplus. Despite BHFS's suggestion otherwise, the Reorganized ASARCO was not really the "client" that the law firms had represented during the Chapter 11 bankruptcy proceedings.[8] Instead, the Reorganized ASARCO is more similar to a residual or equity interest holder because it received the surplus after payment of all of *ASARCO*'s creditors. Thus, every dollar paid to the law firms was a dollar taken away from the Reorganized ASARCO and its parent company. In this case, all creditors also already have been paid. BHFS states that it "does not seek payment of its fees from the

---

[7] In terms of case law, the only decision that seemingly supports BHFS's position is *In re Macco Properties, Inc.*, 540 B.R. 793 (Bankr. W.D. Okla. 2015). In *Macco,* counsel for a Chapter 11 trustee submitted a large fee application. The decision suggests that the law firm requested at least some compensation for defense of its own fee application. However, the *Macco* court never clearly identified the amount of such request. In any event, a creditor and an equity holder objected to the entire request, including the fees for fee defense portion of the application under *ASARCO*. It was an acrimonious case. The Oklahoma bankruptcy court characterized the objections as "tort claims" and noted that the "objections are not about whether the Estate Professionals' fees are reasonable." *Id.* at 877 and n.433. The bankruptcy court considered *ASARCO* but purported to distinguish it, at least in part, on the basis that the Chapter 11 trustee had not objected to the fee applications. *Id.* at 878. The *Macco* court apparently allowed counsel some amount of fees for fee defense.
    The Court has carefully considered the *Macco* decision, which is not binding precedent. Unlike in *Macco,* the Debtor has not asserted "tort claims" against BHFS. And the Debtor's objection to the Third BHFS Application centers on reasonableness and necessity (in addition to the Fee Defense Attorneys' Fees Issues). But, to the extent that the *Macco* opinion allowed counsel fees for fee defense under Section 330(a), respectfully, the Court disagrees with such decision as incompatible with Section 330(a) and *ASARCO*.

[8] A "client" is a "person or entity that employs a professional for advice or help in that professional's line of work; esp., one in whose interest a lawyer acts, as by giving advice, appearing in court, or handling a matter." Black's Law Dictionary 309 (Thomson Reuters 10th ed. 2014). Though ASARCO was a "client" during the bankruptcy case, the Reorganized ASARCO was not. When the Reorganized ASARCO opposed the law firms' fee applications, it was no longer employing those law firms for advice and counsel. Indeed, as the Supreme Court found, the firms were acting for their own benefit. *ASARCO*, 135 S. Ct. at 2167.

13

objecting party, debtor Jesse Morreale." BHFS Br. at 2. While that may be true technically, the practical reality is otherwise. Every dollar the estate pays to BHFS is a dollar that will be unavailable as a surplus to be paid to the Debtor. That is the same circumstance that existed in *ASARCO*. In reality, what BHFS is attempting to do is to have the Debtor effectively "pay" BHFS to defend against the Debtor's Objection and the UST Objection — all for BHFS's sole benefit. *ASARCO* and Section 330(a) do not allow for such compensation.

### 2. **BHFS's Second Argument.**

With respect to its second argument, BHFS suggests that Section 330 should "not apply to the particulars of the Debtor's objection" because the objections to BHFS's fees are "largely attacks on the Trustee's administration of this case" and BHFS's defense of its own fees is "bound up with its defense of the Trustee." The Court disagrees legally and factually.

Legally, BHFS failed to refer to any legal authority standing for the proposition that fee objections based on "attacks on the Trustee's administration of [a] case" create an opportunity to collect fees for fee defense. Neither Section 330(a) nor *ASARCO* identifies any such exception. The closest BHFS comes is its reliance on *Macco*, 540 B.R. 793. In *Macco*, the objectors asserted "tort claims." But that has not happened in this case. And, as explained previously, the Court respectfully disagrees with the *Macco* decision as it relates to the Fee Defense Attorneys' Fees Issues.

Factually, the United States Trustee and the Debtor have asserted a myriad of objections to the Third BHFS Application that all seem to fit comfortably within the statutory Section 330(a) framework. In addition to the Fee Defense Attorneys' Fees Issues, the United States Trustee objected to the reasonableness of the Third BHFS Application including "compensation for clerical functions" and various costs. UST Objection at 5-6. Reasonableness is a principal consideration required by Sections 330(a)(1) and (3). And, in addition to the Fee Defense Attorneys' Fees Issues, the Debtor objected to the Third BHFS Application on numerous grounds, including that: the services generally did not benefit the estate (or primarily benefitted the Trustee and BHFS); specific services on tax issues were not beneficial to the estate; the amount of the fees was not reasonable; the hourly rates of BHFS personnel were not reasonable; a significant portion of fees was for non-compensable overhead; and a significant portion of fees related to work performed in the *Morreale Hotels* Case. Debtor's Objection at 1-13. Again, reasonableness, necessity, and benefit to the estate are all core inquiries under Sections 330(a)(1)(A), (3), and (4).

The Debtor's Objection appears quite aggressive. There are some implicit or express attacks on the Trustee's performance and BHFS's services. Although the Court has not had an opportunity to fully adjudicate such issues, the Court is confident that the BHFS provided at least some reasonable, necessary, beneficial, and valuable services. Further, the Court already has determined that the Trustee performed "exceptional work." (Trustee Fee Denial Order at 1.) But the Debtor is entitled to

object. In the Court's view, the nature of the Debtor's Objection does not somehow magically result in BHFS's being able to collect fees for fee defense activities.

### 3. BHFS's Third Argument.

With respect to its third argument, BHFS invites the Court to avoid *ASARCO* because of "unfairness and unfortunate policy results." BHFS Br. at 10. Pleas for fairness and policy cannot prevail over the Bankruptcy Code and binding Supreme Court precedent. In fact, the Supreme Court considered — and rejected — similar arguments in *ASARCO*.

In *ASARCO*, the United States (acting as *amici curiae*) "contend[ed] that awarding fees for fee-defense litigation is a 'judicial exception' necessary to the proper functioning of the Bankruptcy Code." *ASARCO*, 135 S. Ct. at 2168. Further, the United States suggested that rejecting fees for defense of bankruptcy fee applications would be inequitable because such litigation would dilute fees for bankruptcy attorneys, thus undermining the retention of "talented attorneys." *Id*. Justice Thomas made short work of such arguments. First, the Supreme Court explained:

> In our legal system, *no* attorneys, regardless of whether they practice in bankruptcy, are entitled to receive fees for fee-defense litigation absent express statutory authorization. Requiring bankruptcy attorneys to pay for the defense of their fees thus will not result in any disparity between bankruptcy and nonbankruptcy lawyers.

*Id.* (emphasis in original). Second, Justice Thomas opined that the Supreme Court "would lack the authority to rewrite the statute even if [it] believed that uncompensated fee litigation would fall particularly hard on the bankruptcy bar." *Id.* at 2169; *see also Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004).

The Court is stuck with Section 330(a) as Congress enacted it and the Supreme Court interpreted it. The statute simply does not authorize an award of fees for defending a fee application. Period. A bankruptcy judge is unable to inject his or her own policy preference and personal sense of fairness to reach a different conclusion. Thus, the Court cannot rely on the "unfairness and unfortunate policy results" argument presented by BHFS.

### D. Fees for Defense of the Trustee's Application Are Not Compensable.

In addition to requesting fees for defending its own Third BHFS Application, BHFS also asks for approval of $63,091 for defending the Trustee's Application. As explained previously, through the Trustee's Application, the Trustee sought a statutory maximum commission for disbursements to creditors in this bankruptcy proceeding. However, the Trustee also sought a significant enhancement based upon $8,432,273.80 in disbursements made to creditors in the separate Chapter 11

15

reorganization in the *Morreale Hotels* Case. The Debtor objected that the Trustee could not be compensated in such fashion. That is when BHFS, at the Trustee's request, took on the role of defending the Trustee so as to maximize the Trustee's own compensation. In the Trustee Fee Denial Order, the Court denied the additional compensation sought by the Trustee. Acting for the Trustee, BHFS appealed and lost. *Morreale*, 595 B.R. 409. BHFS initiated a further appeal to the Tenth Circuit. So, BHFS is now requesting fees from the bankruptcy estate for a losing effort to obtain more compensation for the Trustee. Given that this is a surplus case, the practical result is that the Debtor is effectively being asked to pay for such efforts. Not surprisingly, he opposes this tactic.

The proper legal analysis for considering BHFS's defense of the Trustee's Application is the same analysis that is applicable to evaluating BHFS's defense of its own Third BHFS Application — so the Court incorporates its prior discussion. The reason is because the Trustee's Application also is governed by the same statute: Section 330(a)(1). Under Section 330(a)(1), a trustee may be awarded compensation but only "reasonable compensation for actual, necessary services rendered by the trustee . . . ." It is true that the *amount* of reasonable compensation for trustees is calculated differently than other professionals. 11 U.S.C. §§ 326 and 330(a)(7). But, trustees, like other professionals, are still bound by the Section 330(a)(1) limitation to "actual, necessary services."

The Bankruptcy Code does not contain any authorization for a trustee to recover additional fees for defending his or her own application for compensation. So, the entire rationale and reasoning of the Supreme Court's *ASARCO* opinion applies to trustees under such circumstances. A trustee simply is not rendering a "service" to a bankruptcy estate by defending his own application. *ASARCO*, 135 S. Ct. at 2167 ("litigation in defense of a fee application is not a 'service' within the meaning of § 330(a)(1)"). Instead, in such context, the trustee is pursuing personal benefit. *Id*. And, Justice Thomas' concern about allowing compensation for unsuccessful fee litigation also is present in this case since the Trustee has — at least at this stage — lost his argument for enhancement of compensation in both this Court and the United States Bankruptcy Appellate Panel for the Tenth Circuit. *Id*. at 2166 ("We decline to adopt a reading of § 330(a)(1) that would allow courts to pay professionals for arguing for fees they were found never to have been entitled to in the first place.").

The Bankruptcy Code is designed to ensure that the actions of trustees are compensable only if likely to result in benefit to the estate. *See* 11 U.S.C. § 704(1) (setting forth duties of trustee, including "[t]he duty to collect and reduce to money all property of the estate for which such trustee serves, and close such estate as quickly and expeditiously *as is compatible with the best interests of the parties in interest*) (emphasis added). *See also In re C. Keffas & Son Florist, Inc.*, 240 B.R. 466, 474 (Bankr. E.D.N.Y. 1999) (holding that trustee who fails to perform necessary cost-benefit analysis before bringing action that will delay close of case and payment to parties in interest may breach statutory mandate under Section 704(1)). Defense of a trustee's

fee application does not inure to the benefit of the estate such that it can be deemed a "service" under Section 330(a).

Based on the foregoing, the Trustee is not able to collect additional fees for defending his own Trustee's Application. However, in this case, the Trustee asked BHFS to undertake the work. BHFS agreed and did so. So, now the question becomes whether BHFS may be compensated for fee defense litigation when the Trustee himself would not be able to be compensated for the same work? Asked in this way, the question virtually answers itself. BHFS cannot receive compensation for defense of the Trustee in these circumstances. BHFS's work in defending the Trustee redounded only to the benefit of the Trustee personally, not to the benefit of the bankruptcy estate. If the Trustee had requested a statutory maximum commission based on Sections 326 and 330(a)(7) and distributions in this case, there likely would not have been any fee litigation at all. However, the Trustee sought an enhancement for distributions from the *Morreale Hotels* Case. That aggressive and novel position served only the Trustee's personal interests.[9]

BHFS suggests that the fee defense fees were necessary because without a determination as to the amount of compensation payable to the Trustee, the Trustee would not be able to administer the estate. According to BHFS, this was a "service" to the estate because it enabled the Trustee to calculate the payments that were to be made to him under Section 326 and to administer the estate and file a final report pursuant to 11 U.S.C. § 704. But in *ASARCO,* the Supreme Court rejected the argument that "the estate has an interest in obtaining a just determination of the amount it should pay its professionals," and declined to find that professional fees incurred in defending fee applications were compensable services under Section 330. 135 S. Ct. at 2166. Indeed, the Court deemed such proposed interpretation of "services rendered" to include fee defense as "unnatural" because it would "allow courts to pay professionals for arguing for fees they were found never to have been entitled to in the first place." 135 S. Ct. at 2166.

Perhaps recognizing that it is fighting an uphill statutory battle, BHFS contends that "[i]t defies common sense to suggest that the Trustee's counsel may not defend its own client in this case and that the Trustee is just left out own his own, without even a retrospective right of indemnification." BHFS Br. at 5-6. In effect, BHFS asserts that Chapter 7 trustees are entitled to counsel, and that if Chapter 7 trustees are not able to

---

[9] BHFS argued that its work was important to the bankruptcy system. BHFS Br. at 6 ("The issue [of the Trustee's compensation] is one of huge importance to Chapter 7 practice involving single member entities.") Maybe. Chapter 7 trustees as a group might benefit if case law is developed allowing them to receive additional commissions based on disbursements in related bankruptcy cases. But such potential does not satisfy the Section 330(a) requirement for benefit to the estate in this case. To the extent that the Trustee believes that it is in his interest (or the interest of other Chapter 7 trustees) to develop case law expanding commissions, there is nothing in the Bankruptcy Code that prevents him from prosecuting such challenges — but the costs of such litigation would have to be borne by the Trustee, or perhaps by a like-minded group of Trustees or others who believed that developing such case law would serve their interests as well. It is not for the bankruptcy estate (and ultimately the Debtor who stands to receive the surplus) to fund such legal action.

use estate funds to pay counsel when complex legal issues arise in connection with their fee applications then trustees will face the prospect of paying for their defense out of pocket or will have to go without counsel just when counsel's assistance is required.[10] This argument is not compelling.

Since a Chapter 7 trustee's right to receive a commission is established by Section 326 and is mainly a matter of simple mathematical calculation, challenges to trustee fee applications are extremely rare. When disputes do arise, they typically relate to miscalculations which are easily resolved and do not involve complex legal questions. In the unlikely event that a trustee were to face a spurious challenge to his fee application that required legal counsel, courts could address the matter through the imposition of sanctions. See ASARCO, 135 S. Ct. at 2168 n. 4 ("To the extent the United States harbors any concern about the possibility of frivolous objections to fee applications, we note that Federal Rule of Bankruptcy Procedure 9011 — bankruptcy's analogue to Civil Rule 11 — authorizes the court to impose sanctions for bad-faith litigation conduct, which may include 'an order directing payment . . . of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.'") (internal quotations omitted) (citing *Law v. Siegel*, 571 U.S. 427 (2014)); *In re Huepenbecker*, 546 B.R. at 385 (stating that court "will use appropriate measures, including sanctions, to deter unfounded objections and mitigate the peculiar hardships that the American Rule may visit upon bankruptcy professionals entitled to reasonable compensation under § 330(a)."). Short of that, there is no basis in statutes or rules for a trustee or his counsel to be paid for defending a trustee's application. A trustee simply will be left in the same position as other professionals. He may limit his request to the statutory commission; he may defend a request for additional compensation himself; or he may engage personal counsel to defend his fee application.

Both BHFS and the Debtor acknowledge that there is not much case law directly addressing fees for fee defense specifically in the context of trustee compensation requests. As set forth previously, such circumstances are rare since trustee compensation now is largely formulaic under Sections 330(a) and 326. See *JFK Capital Holdings*, 880 F.3d at 753-55 ("the percentage amounts listed in Section 326 are presumptively reasonable for Chapter 7 trustee awards"; "Section 330(a)(7) therefore treats the commission as a fixed percentage, using Section 326 not only as the maximum but as a baseline presumption for reasonableness in each case."); *In re Rowe*, 750 F.3d 392, 396, 397 (4th Cir. 2014) ("§ 330(a)(3) is generally immaterial in determining the compensation for a Chapter 7 trustee"; "absent extraordinary circumstances, a Chapter 7 trustee's fee award must be calculated on a commission basis, as those percentages are set out in § 326(a)"); *Mohns, Inc. v. Lanser*, 522 B.R. 594, 601 (E.D. Wis. 2015), *aff'd* 796 F.3d 818 (7th Cir. 2015) ("Congress viewed a

---

[10] BHFS also argued that denying compensation to trustee's counsel in this circumstance "sets a dangerous precedent" because a trustee should be able to have the assistance of counsel to defend against an ill-considered motion to remove a trustee, a motion to convert a case to Chapter 11, or a motion challenging a trustee's acts in administering the estate. But those issues are not presently before the Court. The Court's ruling here is limited to the question of whether attorneys may be compensated by the estate for fees incurred in connection with defending fee applications.

commission calculated under the formula in § 326 as the right amount of compensation in nearly every case").

However, there are a few decisions concerning fees for defending trustee compensation that the Trustee and the Debtor identified. In *Community Home*, a law firm sought compensation under Section 330(a). *Cmty. Home Fin. Serv.*, 2017 WL 1753224. A small part of the work was for "work defending the Trustee's own fee applications." *Id.* at *19. The bankruptcy court cited *ASARCO*, 135 S. Ct. 2158, as controlling and ruled, without much additional analysis, that "fees for defending the Trustee's applications are non-compensable." *Id.* On the other hand, in *Macco*, 540 B.R. at 878, a different bankruptcy court reached the opposite result: "Legal services provided by Counsel to defend Trustee's . . . fee applications from objections and setoff claims . . . are clearly services to the 'administrator of the estate.'" *Id.* Thus, the court allowed such fees. *Id.* As noted previously, the *Macco* court attempted to limit and pigeon-hole *ASARCO*. In the end, the Court finds neither *Community Home* nor *Macco* to be particularly helpful on the Fee Defense Attorneys' Fees Issues. Other than a reference to *ASARCO, Community Home* contains no real legal analysis of the specific issue. And, in *Macco,* the bankruptcy court seemed to be influenced strongly by "setoff claims." Such "setoff claims" are not present in this bankruptcy case. Further, as explained previously, the *Macco* court's attempt to distinguish *ASARCO* is not compelling. Thus, the few other cases on the topic add very little.

In the end, the Court concludes that the work BHFS did defending the Trustee's Application is not compensable. This conclusion flows from Section 330(a). There is no authorization in the Bankruptcy Code for allowance of such fee defense fees. And, *ASARCO* also demands such result.

## V. Conclusion and Order

The Court does not relish fee disputes. Further, based on the Court's long association with this case, the Court is certain that BHFS rendered some valuable legal services. However, consistent with its analysis above, the Court concludes that, to the extent that BHFS seeks approval of fee defense attorney's fees in the Third BHFS Application, the Court must deny such request. It is, therefore,

ORDERED that BHFS's request for approval of the Fee Defense Attorneys' Fees identified in the Stipulation (Docket No. 1031) is DENIED.

All other objections to the Third BHFS Application are reserved for eventual consideration in connection with any Final Fee Application to be submitted by BHFS.

DATED: July 3, 2019

BY THE COURT:

*Thomas B. McNamara*

Thomas B. McNamara
United States Bankruptcy Judge